**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Entertainment Publications, LLC,<br><br>Debtor. | : <br> : Chapter 7 <br> : <br> : Case No. 13-10496 (CSS) <br> : <br> : **Hearing Date: Only If Objections Are Filed** <br> **Objection Deadline: August 25, 2014 AT 4:00 P.M. (ET)** |

**TRUSTEE'S MOTION FOR (1) APPROVAL OF A COMPROMISE AND**
**SETTLEMENT WITH THE DEPARTMENT OF TREASURY,**
**STATE OF MICHIGAN PURSUANT TO RULE 9019**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Charles M. Forman, the chapter 7 trustee (the "Trustee") for the bankruptcy estate of Entertainment Publications, LLC (the "Debtor"), submits this motion for an Order, pursuant to section 105(a) of the Bankruptcy Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Trustee's proposed compromise and settlement with the Department of Treasury, State of Michigan, on the terms and conditions set forth in the settlement agreement attached as Exhibit A. In support of the motion, the Trustee respectfully represents that:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334(b).

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

3. Venue of this matter in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The basis for the relief sought herein is Bankruptcy Rule 9019(a).

# INTRODUCTION

1. On March 12, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

2. On March 13, 2013, the Office of the United States Trustee appointed the Trustee to serve as the interim chapter 7 trustee. The Trustee continues to serve as the chapter 7 trustee for the Debtor's bankruptcy estate.

3. On September 4, 2013, this Court entered an Order granting the Trustee's application to employ and retain Honigman Miller Schwartz and Cohn LLP ("Honigman") as special tax counsel to the Trustee.

## THE STATE OF MICHIGAN TAX LITIGATION

4. Prior to the Petition Date, the Debtor received a Notice of Preliminary Audit Determination from the Department of Treasury of the State of Michigan with respect to the tax period January 2006 through September 30, 2009 (the "Tax Claim"). Pursuant to a Stock Purchase Agreement between the Debtor and the former equity owner of the Debtor, IAC/InterActiveCorp. ("IAC"), IAC was required to indemnify the Debtor for all tax liability assessed prior to May 29, 2008 (the "Sale Date").

5. The Debtor sought to contest the Tax Claim; however, to commence an action in the Michigan Court of Claims, the Debtor was required to pay under protest the full amount of the Tax Claim, plus interest, to the Michigan Department of Treasury (the "Tax Litigation"). On September 26, 2011, the Debtor and IAC entered into an agreement with regard to the Tax Claim (the "Tax Agreement")[1] which provided that: (a) IAC would remit their allocation of the Tax

---

[1] The Tax Agreement was not assumed by the Trustee based on the Trustee's belief that the Tax Agreement was not in the best interest of the Debtor's estate.

Claim to the Debtor for the purpose of commencing the Tax Litigation, with the understanding that any refund for taxes assessed prior to the Sale Date would be returned to IAC; (b) Honigman would be retained as counsel for the Tax Litigation; and (c) Honigman's fees would be paid by the Debtor.

6. On October 3, 2011, the Debtor paid under protest the amount of $667,384.71 to the Department of Treasury, of which IAC contributed $470,411 and the Debtor contributed $196,973.71.

7. On October 10, 2011, Honigman entered into an engagement agreement (the "Engagement Agreement") with IAC and the Debtor whereby IAC retained Honigman to represent it with respect to the Tax Claim, and the Debor agreed to be responsible for the performance of the obligations imposed under the Engagement Agreement, including payment of fees and expenses incurred in connection with prosecuting the Tax Claim[2].

8. Thereafter, on October 14, 2011, Honigman filed a Complaint in the Michigan Court of Claims to dispute the Tax Claim on behalf of the Debtor entitled *Entertainment Publications LLC, successor-in-interest by merger to, Entertainment Publications Operating Company, Inc., v. Department of Treasury, State of Michigan.*

9. The Trustee retained Honigman to continue the Tax Litigation on behalf of the Debtor's estate. The issues raised in the Tax Litigation with respect to the Debtor's interest in the Tax Claim and IAC's interest in the Tax Claim are substantially the same. Thus, in addition to representing the Trustee in the Tax Litigation, Honigman also continued to serve as counsel to IAC in connection with the Tax Litigation.

---

[2] The Engagement Agreement was not assumed by the Trustee based on the Trustee's belief that the Engagement Agreement was not in the best interest of the Debtor's estate.

10. The Trustee and IAC agreed to pay Honigman's fees on a pro rata basis in proportion to the amount IAC and the Debtor paid under protest to the Michigan State Department of Treasury.

## THE PROPOSED SETTLEMENT

11. Honigman and the Michigan Department of Attorney General (the "Department") negotiated a resolution of the Tax Litigation. The Trustee and IAC approved the terms of the resolution as set forth in the settlement agreement attached as **Exhibit A** (the "Settlement Agreement").

12. The pertinent terms of the Settlement Agreement are as follows:

   a. The Department shall retain 26% of the total Tax Claim paid under protest, with interest from the payment date of October 3, 2011, for a total of $172,484 (the "Retainage").

   b. The Debtor shall receive a 74% refund of the total Tax Claim paid under protest, with interest from the payment date of October 3, 2011, for a total of $549,538 (the "Refund").

   c. The Refund shall be split between the Debtor's estate and IAC on a pro rata basis in proportion to the amount of the Tax Claim paid under protest to the Michigan State Department of Treasury. The amount IAC contributed to the Tax Claim represented taxes assessed prior to the Sale Date and the amount the Debtor contributed to the Tax Claim represented taxes assessed after the Sale Date.

   d. The Debtor contributed approximately 31% of the Tax Claim, and therefore the Debtor's portion of the Refund is $170,356.78.

e. IAC contributed approximately 69% of the Tax Claim, and therefore IAC's portion of the Refund is $379,181.22.

## RELIEF REQUESTED AND BASIS THEREFORE

13. The Trustee respectfully requests the Court's approval of the Settlement Agreement and the proposed settlement memorialized therein pursuant to Bankruptcy Rule 9019(a).

14. Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estates, and providing for the efficient resolution of bankruptcy cases. *See In re Martin*, 91 F.3d 389, 393 (3rd Cir. 1996); *Matter of Penn Central Transp. Co.,* 596 F.2d 1102, 1113 (3d Cir. 1979); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). To achieve these results, Bankruptcy Rule 9019(a) empowers a court to approve a settlement or compromise after notice and a hearing. *See* FED. R. BANKR. P. 9019(a).

15. In applying this rule, a court should approve a settlement if it is fair and equitable, and is in the best interest of the estate. *See The Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997). To properly make this determination, a court "must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* at 356; *see Martin*, 91 F.3d at 393.

16. The United States Court of Appeals for the Third Circuit has provided the following four criteria that a court must consider to approve a settlement: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the

paramount interest of the creditors. *See Martin*, 91 F.3d at 393; *see also In re Nutraquest, Inc.*, 434 F.3d 639, 644 (3d Cir. 2006).

17. In addition to these criteria, courts have employed additional factors. These additional factors include: (1) the competency and experience of counsel who support the settlement; (2) the relative benefits to be received by individuals or groups within the class; (3) the nature and breadth of releases to be obtained by the parties to the settlement; and (4) the extent to which the settlement is the product of arm's length bargaining. *See Fischer v. Pereira (In re 47-49 Charles Street, Inc.),* 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

18. When applying the above criteria to the facts of a particular case, a court does not have to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. *See Cajun Elec.*, 119 F.3d at 356. Nor does a court have to conduct an evidentiary hearing as a prerequisite to approving a settlement. *See Depositer v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994). A proposed settlement need not be the best one that could be achieved, but must only fall "within the reasonable range of litigation possibilities." *Matter of Penn Central Transp. Co.,* 596 F.2d at 1114 (citation omitted); *In re World Health Alternatives, Inc.*, 344 B.R. at 296.

19. Thus, a court should "defer to the trustee's judgment so long as there is a legitimate business justification" to support the settlement. *Martin,* 91 F.3d at 395 (citations omitted).

20. In the present matter, the proposed settlement falls well within the highest and lowest points in the range of reasonableness and, accordingly, should be approved.

ACTIVE/ 76373323.1

21. The Trustee has determined that the Retainage and Refund contemplated in the Settlement Agreement are reasonable after conferring with Tax Counsel to evaluate the strengths and weaknesses of the estate's claims and the Department's defenses thereto. Under the proposed settlement, the Department will retain 26% of the Tax Claim and the Debtor's estate and IAC will receive a 74% refund. Tax Counsel has advised the Trustee that briefing and arguing further motions in the Tax Litigation could result in up to $30,000 in additional legal fees, and therefore the 26% retention of the Tax Claim by the Department does not justify the costs and risks of continuing litigation.

22. Therefore, the Trustee has determined that the Settlement Agreement is reasonable and in the best interest of the Debtor's estate.

## **NOTICE**

23. Notice of this Motion has been given to (a) counsel for the Department, (b) counsel for IAC, (c) the Office of the United States Trustee for the District of Delaware, and (d) those parties that have formally requested receipt of pleadings in the Debtors' cases pursuant to Bankruptcy Rule 2002.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter an Order approving the Settlement Agreement and granting such other and further relief as is just and proper.

Dated:  August 4, 2014         Respectfully submitted,
       Wilmington, Delaware

**DRINKER BIDDLE & REATH LLP**

**/s/ Howard A. Cohen**
Howard A. Cohen (DE 4082)
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801-1621
Telephone: (302) 467-4200
Fax: (302) 467-4201
howard.cohen@dbr.com

-and-

**FORMAN HOLT ELIADES**
**& YOUNGMAN LLC**
Kim R. Lynch, Esq.
80 Route 4 East, Suite 290
Paramus, NJ 07652
Telephone: (201) 845-1000
Fax: (201) 845-9112
klynch@formanlaw.com

*Counsel to Charles M. Forman, the Chapter 7 Trustee*